We move to the next case this morning, Lawrence Northern v. Lynn Dobbert. Robert Earls Ready with Northern v. Dobbert and Mr. Earls. Robert Earls Good morning, Your Honor, Your Honors. My name is Robert Earls. I'm a partner at the law firm Kirkland & Ellis, and I represent the appellant, Lawrence Northern, in the case Northern v. Dobbert, case number 19-3167. Can Your Honors hear me okay? Robert Earls Yes. Robert Earls Okay. The issue on appeal is whether Mr. Northern, my client, created a dispute of material fact about whether he exhausted administrative remedies about his wound care claim. I know that Your Honors are versed in the facts of the underlying case, but in basic terms, Mr. Northern is an inmate in Wisconsin. He tore his Achilles tendon back in January of 2013. He had surgery in May of 2013. In the days after his surgery, his surgical dressing was changed only intermittently. Approximately 15 months later in May of 2014, he filed an inmate grievance about receiving substandard health care. About one month later, in August of 2014, he filed an inmate complaint about being retaliated against. We argue that the August 2014 inmate complaint about retaliation put the institution on notice and adequately exhausted Mr. Northern's administrative remedies about his wound care claim. There are three reasons why this is so. First, the reason why an inmate has to exhaust administrative remedies is to put the institution on notice of potential problems that may ultimately lead to lawsuits, and it gives the institution an opportunity to resolve issues internally. Mr. Northern's August 11, 2014, complaint did that by setting out three key facts. One, that his wounds were not dressed timely. Two, that nurse Tony Johnson, who was an employee of the institution at the time, was the person who failed to change his surgical dressing. And three, that these actions were done as an act of retaliation. The inmate complaint examiner, a man named Brendan Ingenthrum, reviewed those facts and he acknowledged them in his decision when he said, quote, he, meaning Mr. Northern, simply describes instances where he feels he has been wronged, which does not constitute retaliation. Simply put, your honors, the facts of Mr. Northern's wound care complaint are built into his complaint of retaliation. The complaint examiner reviewed those facts and was consequently on notice of them. Second, inmate complaints don't have to assert legal theories and they don't have to be based on any evidence. The court's ruling of the Western District of Wisconsin stated that even under Maddox v. Love, which was decided by this court in 2011, that, quote, it is not fair to say that the examiner decided Northern's medical care claims on the merits, end quote. We disagree with that reasoning because we think that Judge Peterson is holding Mr. Northern's grievance to too high of a standard. In Maddox, this court reversed the trial court, holding that the plaintiff exhausted his administrative grounds, even though he didn't name the specific prison guards he was complaining about. Similarly, in Smith v. Dallal, which is a Western District of Wisconsin case, that court clarified that nothing in the applicable Wisconsin regulations says that the inmate has to, quote, provide a specific degree of factual particularity in the grievance, end quote. Further, the inmate making the grievance doesn't have to lay facts, articulate legal theories, or demand particular relief. He just has to alert the prison of the nature of the wrong. Mr. Northern's August 2014 grievance did that. His grievance alerted the prison that his wounds were inadequately treated as a form of retaliation. The complaint examiner reviewed the evidence of retaliation, that evidence included the allegations of inadequate wound care. In other words, your honors, the substance of the retaliation counts. Mr. Northern did not complain of retaliation in the form of, for example, being made to do extra work or having visiting privileges suspended. He complained of retaliation of inadequate wound care. That is in the grievance. It is the evidence that the examiner reviewed to make his decision. By reviewing that evidence, the complaint examiner was adequately put on notice of Mr. Northern's concerns. Mr. Earls, this is Judge Brennan. A question about sequence. You represented Mr. Northern in his earlier successful suit with regard to the pulling of tendon while he was playing basketball in prison. Is that correct? That's correct, your honor. And that went to a jury verdict in Mr. Northern's favor. Is that correct? That's correct, your honor. Can you tell us the timeframe between the pulling of the tendon and then the post-surgical wound care that's the subject of this case? Yes, your honor. Days, weeks, months? Yes, your honor. Mr. Northern was injured in January of 2013. I don't know the exact date. I want to say it was January 18th or January 21st, right around there, 2013. He had surgery in early May of 2013. So that was roughly four and a half to five months between like the injury and the surgery. And then in the days after the surgery, probably I think the surgery was on May 9th. So from May 9th to say May 18th and 19th, those are the dates in question here. That's the overall time frame between the injury, like having torn and pulled his Achilles tendon, January 2013 to like May 19th. So roughly five months. Thank you. You may continue. Sure. Finally, I apologize. You're probably getting a little video of my children in the background. I'd say third, your honor. And finally, when the inmate complaint examiner took up Mr. Northern's August 2014 complaint and examined on the merits, he reanimated or just brought back to present Mr. Northern's wound care claims. The complaint examiner, and the reason for this, your honor, is that the complaint examiner has broad discretion to investigate inmate claims or to dismiss them on the merits. However, when an examiner uses that discretion and does not dismiss a complaint on procedural grounds, the grievance has sufficiently put the examiner on notice and the institution cannot rely on a exhaust defense. Here, the complaint examiner investigated Mr. Northern's August 2014 grievance, which is about retaliation, but the grievance included claims and facts of inadequate wound care. But reviewing those claims put the examiner on notice. Now you could have said, you know what, this whole thing is just time barred, but didn't do that. Instead, reviewed the evidence that was of retaliation. That evidence included Mr. Northern's claims of inadequate wound care, or like really, and when I say wound care, it's failure to change his surgical dressings on a timely basis. Judge Peterson, like, so consequently, Judge Peterson's ruling that Mr. Northern, so, excuse me, by reviewing those claims, he is then on notice of what is being complained about, and he can't then fall back and say, oh, you know, like the institution cannot then fall back on a administrative remedies defense. And consequently, Judge Peterson's ruling that Mr. Northern failed to exhaust, in our, you know, we believe was error. Your honors, because of those reasons, Mr. Northern has created a dispute of material facts, and he asked this court to reverse Judge Peterson's decision on this issue of his, about his wound care claims. Your honors, in the alternative, Mr. Northern requested this court grant a paybee hearing so that the issue of wound care could be determined there. That's the balance of my argument. Thank you. Clay Kosky? May it please the court, Clay Kosky appearing on behalf of the appellees, and I have two main points. First, the August 2014 grievance did not exhaust Mr. Northern's administrative revenues. And second, Mr. Northern has waived his claims against three of the defendants on appeal. He did not address nurses Dobbert, Frisk, or Stetter. And we raised that argument in our brief, and he did not, in his reply, reply to that argument. So he has waived all claims against those defendants. Turning to the first point, this court needs to focus on one document to resolve this case, and that is the August 2014 grievance. Keeping that in mind, there is also a July 2014 grievance. That July 2014 grievance raised the wound care claims that Mr. Northern would like to pursue. But that grievance was untimely, and it was dismissed as untimely by the complaint examiner. He is trying to do an end round around that denial of an untimely complaint by filing an August 2014 grievance about a different topic, retaliation for not signing a form. And he is trying to use that August 2014 inmate grievance to serve as a substitute for the July grievance that was dismissed as untimely. It would not make sense to interpret the August events that occurred 15 months prior. That would not make any sense. We also believe that there is no basis for a Pavey hearing here, because as I said, the August 2014 grievance is the key document that this court needs to focus on. It's really the only document this court needs to focus on in terms of resolving this claim. And there are no facts in dispute, so there's nothing to remand for an evidentiary hearing. This isn't, for example, a situation where DOC is saying that Mr. Northern didn't file a grievance, and Mr. Northern is saying I did file a grievance, and there's a factual dispute over that. No, we're focused on the August 2014 grievance and the language in that grievance. Mr. Northern very clearly in that grievance, as he was required to do under DOC's rules, identified on the first page at the top of that page in bold writing the word issue, and he lists his one issue in that grievance as being about retaliation for failing to sign these refusal of treatment forms. And then he goes on to catalog over time the instances that he led to that retaliation. He concludes by talking about an August 2014 incident that he believes is retaliation. That is why the August 2014 grievance was not denied as untimely, because he did talk about things in that August 2014 grievance that were within 14 days of when he filed the grievance. So it would not have made sense for the inmate complaint examiner to say that one was untimely when it was timely as to the August 2014 occurrences that he highlighted there. So our position is that Judge Peterson and the district court got this right. He concluded, and I think the word he used was that the thrust of the August 2014 grievance was not about wound claims. It was about retaliation for failing to sign a form. Therefore, the August 2014 grievance cannot exhaust the remedies. Again, there are two main, we have the August 2014 grievance, that's the court's focus. The court also has to be aware in the back of its head that there was a July 2014 grievance that did raise the wound care claims and it was denied as untimely. When you're referring to that July grievance, you're talking about Exhibit 1001 with its appendix numbers 008 and 009? I believe that's correct because I think Exhibit 1001 is attached to a declaration from a DOC official. If that is the one, then I think that is correct. In our brief, we cite to the record specifically the docket entry that that is, but I believe that's correct, Judge Brennan. Thank you. So I think that, again, having spoke of that August 2014 grievance and why we believe in the main it does not exhaust, as to the waiver issue, the August 2014 grievance talks about May 18th and 19th. There's a direct quote from the grievance. It says, on May 18th and 19th, 2013, R.N. Johnson undertook retaliatory actions by refusing to change my dressing. That sentence, and that's docket entry 36-9, page three. It's also in the appendix at page two. That sentence is the entire linchpin for Mr. Northern's argument. He doesn't point out any sentence in that August 2014 grievance that ties to nurses Dobbert, Frist, or Stetter. When we raised this issue, he didn't respond to it in his reply brief. So he has waived any claims against those three defendants. Our position is that what he did allege against Nurse Johnson was not sufficient because it was focused on retaliation for failing to sign the refusal of treatment form. It was not focused on complaining about her failing to change his wounds, wound dressings. So I'd be happy to answer any of the court's questions. Those are the main points I wanted to make today. And we would ask that this court would affirm the district court's judgment. Thank you, Mr. Koski. Mr. Earls? I think I have one minute to reply. I would say just now, Attorney Koski quoted Mr. Northern's August 11, 2014 grievance. And I thought the quote was incomplete. It says, on May 18th and 19th, 2013, R.N. Johnson undertook retaliatory actions by refusing to shake my dressing, period. When I asked R.N. Johnson if I could have my dressing changed, Johnson stated, quote, put it in a blue slip, end quote, despite my being in medical restriction form that required I be given daily dressings. So I would say I would like that entire quote taken into account. That's like it's a paragraph. It's more than a sentence. And it does set forth the facts of Mr. Northern's complaint about inadequate wound care. Finally, I'd like to say that despite the arguments that the appellees have made, they have not addressed the fact and concept of the inmate complaint examiner's broad discretion to take up this complaint. The inmate complaint examiner could have said, I dismiss all of this as untimely. And that would have been, he had the right to do that. But he didn't do that. Instead, reviewed the evidence, including the sentences that I just quoted to make his decision about whether or not retaliation had occurred. The basis of that of Mr. Northern's wound care allegations. Thank you, counsel. Thanks to both counsel and the case will be taken under advisement.